UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

25-CR-20309-BECERRA/TORRES

CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ANDREW H. JACOBUS,

    Defendant.
_____/

FILED BY ___BM___ D.C.

Jul 8, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### RELEVANT ENTITIES

1. Serfincorp Asset Management. Inc. ("Serfincorp"), Finser International Corporation ("Finser"), Finser Asset Management LLC ("Finser"), Kronus Management LLC ("Kronus"), and Kronus Financial Corporation ("Kronus") (collectively "the Companies") were Florida companies located in Miami, Florida, that promised to invest victim funds into various lucrative investments including Certificates of Deposit (CDs) with investment returns well above industry averages.

2. Investment Company 1 was incorporated in Miami, Florida.

3. A.C.B. was a Venezuelan faith-based organization designed to oversee the needs of the clergy and parishioners within its defined geographical area.

4. Investment Company 2 was incorporated in Miami, Florida.

5. A.C.D. was a Venezuelan faith-based organization designed to oversee the needs of the clergy and parishioners within its defined geographical area.

## THE DEFENDANT

6. Defendant **ANDREW H. JACOBUS** resided in the Southern District of Florida, and at all times relevant to this Indictment was in control of the Companies. **JACOBUS** also worked as an investment professional, promising to invest funds within investors' previously existing online investment accounts and obtain higher-than-average returns.

## THE VICTIMS

7. R.F. resided in south Florida and was a signatory of a bank account at Bank of America.

8. F.S. resided in Panama City, Panama and was a signatory of a bank account at Banesco USA Bank and of a bank account for Investment Company 1.

9. B.A. and J.M. resided in Spain and were signatories of a bank account at Interactive Brokers.

10. L.G. resided in Broward County and was a signatory of a bank account at Interactive Brokers.

11. M.E. resided in Aruba and was a signatory of bank accounts at Caribbean Mercantile Bank and Banesco USA.

12. A.R. resided in south Florida and was a signatory of a bank account for Investment Company 2.

13. M.F. resided in Venezuela and was a signatory of a bank account at Citibank.

14. A.T. resided in Costa Rica and was a signatory of a bank account at UBS.

15. D.L. resided in south Florida and was a signatory of a bank account at Bank of America.

## DEFINITIONS

16. A "*Ponzi* scheme" was an investment fraud scheme that involved the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* schemes focused on attracting new investors to make promised payments to earlier-stage investors to create the false appearance that investors were profiting from a legitimate business. *Ponzi* schemes required a consistent flow of money from new investors to continue and tended to collapse when new investment dropped or when too many investors asked for their money back at once.

17. An investment fraud scheme was one that involves taking on the role of investment advisor for an investor's funded account. Investment fraud schemes focus on gaining access to the funded account and withdrawing investor funds, without authorization from the investors, for the investment advisor's personal use and benefit. At times, the investment advisor provides false documentation establishing the success of the accounts to lull investors into a false sense of security.

## COUNTS 1-7
### Wire Fraud
### (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated fully herein by reference.

2. From as early as in or around 2004, and continuing through in or around September 2024, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**ANDREW H. JACOBUS,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by: (a) soliciting investors and inducing them to invest millions of dollars in the Companies based on materially false and fraudulent statements and the concealment and omission of material facts; (b) using new investor funds to make payments to earlier investors in the Companies to further the scheme; (c) accessing investors' already-existing investment accounts and withdrawing their already-existing funds without authorization from investors; (d) falsely and fraudulently inducing investors to deposit their funds into accounts under defendant's control based on false and fraudulent statements that he would maintain the balance of funds in the account and then withdrawing their already-existing funds without authorization from investors; and (e) using investor funds for the purpose of enriching himself and to further the underlying fraud scheme.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4. **ANDREW H. JACOBUS** falsely and fraudulently induced numerous individuals (the "investors") to put their existing money into accounts under his control and at times, invest their money as directed by defendant, including investing their money with the Companies.

4

**JACOBUS** told the investors that the Companies were successfully investing victim funds in various securities, such as CD's, and making substantial profits. **JACOBUS** met some investors in person and pitched investments in the Companies, often showing them subscription booklets and PowerPoint presentations during the meetings.

5. **ANDREW H. JACOBUS** falsely and fraudulently represented to investors that he would use investor funds to purchase various securities and earn investors substantial returns as high as 12 to 15% per year. In fact, as **JACOBUS** then and there knew, he was not investing the vast majority of the investors' funds as represented to investors, and even when he did so, the investments did not generate sufficient profits to pay investors the promised return on investment and the original principal invested. As a result, **JACOBUS** had to use new investor funds to pay existing investors their promised returns to conceal the Ponzi scheme and the actual performance of the investments with the Companies.

6. **ANDREW H. JACOBUS** also accessed investors' private bank accounts asserting that he would substantially increase their returns and guaranteed the safety of their current account balance. In fact, as **JACOBUS** then and there knew, he eventually withdrew investors' money from their private accounts and converted the funds for his personal use.

7. In furtherance of his fraudulent investment scheme, **ANDREW H. JACOBUS** lulled his investors into a false sense of security, and concealed his conversion of investors' funds by sending investors false and fraudulent emails purporting to show the profitability of the investors' investments with the Companies.

8. Through this investment scheme, **ANDREW H. JACOBUS** misappropriated millions of dollars of investor funds for his own personal use and benefit and for the use and benefit of others.

9. To induce investors to invest money with the Companies and allow defendant to manage their private investment accounts, **ANDREW H. JACOBUS** made, and caused others to make, materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things:

## Materially False Statements

(a) that all investor funds would be used to invest in various lucrative investments through the Companies;

(b) that all investor funds invested with the Companies would be invested in a manner consistent with prior agreements;

(c) that Kronus was generating high rates of return as verified through false and fraudulent documents provided to investors;

(d) that an investor's original account balance or principal, along with any investment profits, would be available for withdrawal;

(e) that the money in the investors' private investment accounts would continue to be invested in high yield investments within those investment platforms.

## Concealment and Omission of Material Facts

(f) that all victim funds were not used for investments to return a profit;

(g) that, in approximately 2020, **ANDREW H. JACOBUS** was subject to an administrative cease and desist order by the U.S. Securities & Exchange Commission ordering him to pay civil penalties and restitution as a result of allegations that, among other things, **JACOBUS** and his then Company commingled funds under his management;

(h) that money of new investors with the Companies was used to pay prior investors with the Companies;

(i) that **ANDREW H. JACOBUS** used investor money to pay personal expenses including legal expenses, property taxes, and other personal items; and

(j) that investor funds were transferred from their bank or private investment accounts into accounts under the custody and control of **JACOBUS**.

10. Based on these materially false and fraudulent statements and concealment and omission of material facts to investors, among others, **ANDREW H. JACOBUS** falsely and fraudulently induced investors to invest approximately $94 million in investment accounts controlled by him from in or around 2004 through in and around September 2024.

## USE OF THE WIRES

11. On or about the dates below, the defendant, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, did transmit and cause to be transmitted by wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, as more particularly described below:

| Count | Approximate Date | Description of Wire Transactions |
|---|---|---|
| 1 | July 9, 2020 | Interstate wire transfer of approximately $1,000,000 from F.S.'s Banesco USA Bank account ending in 0831 to Kronus Management LLC's HSBC UK account ending in 2257. |
| 2 | May 16, 2022 | Interstate wire transfer of approximately $55,000 from B.A. and J.M.'s Interactive Brokers account ending in 4420 to Kronus Management LLC's International Finance Bank account ending in 1961. |
| 3 | May 31, 2022 | Interstate wire transfer of approximately $95,000 from B.A. and J.M.'s Interactive Brokers account ending in 4420 to Kronus Management LLC's International Finance Bank account ending in 1961. |
| 4 | August 18, 2022 | Interstate wire transfer of approximately $10,000 from B.A. and J.M.'s Interactive Brokers account ending in 4420 to Kronus Management LLC International Finance Bank account ending in 1961. |

| Count | Approximate Date | Description of Wire Transactions |
|---|---|---|
| 5 | October 17, 2022 | Interstate wire transfer of approximately $137,564 from A.C.B.'s Bradesco BAC Florida Bank account ending in 9203 to Kronus Management LLC's International Finance Bank account ending in 1961. |
| 6 | January 20, 2023 | Interstate wire transfer of approximately $300,000 from R.F.'s Bank of America account ending in 4821 to Kronus Management LLC's International Finance Bank account ending in 1961. |
| 7 | February 23, 2023 | Interstate wire transfer of approximately $25,000 from L.G.'s Interactive Brokers account ending in 2791 to Kronus Financial Corporation's PNC Bank account ending in 8552. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 8-17
## Money Laundering
## (18 U.S.C. § 1956(a)(1)(A)(i))

1.  The General Allegations section of this Indictment is re-alleged and incorporated fully herein by reference.

2.  On or about the dates described in each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**ANDREW H. JACOBUS**

did knowingly conduct, cause others to conduct, and attempt to conduct, financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and that the financial transactions were designed in whole and in part with the intent to promote the carrying on of specified unlawful activity, as set forth below:

| Count | Approximate Date | Description of Monetary Transactions |
|---|---|---|
| 8 | July 13, 2020 | Transfer in the approximate amount of $120,000 from an HSBC UK Bank account ending in 2257, belonging to Kronus Management LLC, to a Wells Fargo Bank account ending in 2780, in the name of Investment Company 2. |
| 9 | July 14, 2020 | Transfer in the approximate amount of $120,000 from an HSBC UK Bank account ending in 2257, belonging to Kronus Management LLC, to a Wells Fargo Bank account ending in 2780, in the name of Investment Company 2. |
| 10 | January 11, 2021 | Transfer in the approximate amount of $20,000 from an HSBC USA Bank account ending in 8936, belonging to Kronus Management LLC, to a Citibank account ending in 8529, belonging to M.F. |
| 11 | January 11, 2021 | Transfer in the approximate amount of $20,000 from an HSBC USA Bank account ending in 8936, belonging to Kronus Management LLC, to a UBS bank account ending in 7729, belonging to A.T. |
| 12 | May 17, 2022 | Transfer in the approximate amount of $3,330 from an International Finance Bank account ending in 1961, belonging to Kronus Management LLC, to a Banesco USA account ending in 4070, belonging to M.E. |
| 13 | May 31, 2022 | Transfer in the approximate amount of $11,589 from an International Finance Bank account ending in 1961, belonging to Kronus Management LLC, to a Bank of America account ending in 9145, belonging to D.L. |
| 14 | August 19, 2022 | Transfer in the approximate amount of $1,178 from an International Finance Bank account ending in 1961, belonging to Kronus Management LLC, to a Mercantil Banco, S.A. bank account ending in 1302, belonging to A.D.C. |
| 15 | October 18, 2022 | Transfer in the approximate amount of $4,475.81 from an International Finance Bank account ending in 1961, belonging to Kronus Management LLC, to a Citibank account ending in 8529, belonging to M.F. |
| 16 | January 20, 2023 | Transfer in the approximate amount of $7,000 from an International Finance Bank account ending in 1961, belonging to Kronus Management LLC, to a Caribbean Mercantile Bank account ending in 8106, belonging to M.E. |
| 17 | February 23, 2023 | Transfer in the approximate amount of $2,500 from a PNC Bank account ending in 8552, belonging to Kronus Financial Corporation, to a Banesco USA account ending in 4070, belonging to M.E. |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1956(a)(l)(A)(i) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANDREW H. JACOBUS**, has an interest.

2. Upon conviction of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses and overall fraud scheme, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. The property subject to forfeiture as a result of the alleged offenses and fraud scheme includes, but is not limited to: a sum of at least approximately $94,000,000 in U.S. currency, which represents the total amount of funds constituting, or derived from, proceeds traceable to the alleged offenses and overall fraud scheme, which may be sought as a forfeiture money judgment.

5. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c)

A TRUE BILL

FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

ROBERT F. MOORE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 25-CR-20309-BECERRA/TORRES

v.

ANDREW H. JACOBUS,

_____/

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [✓] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:
1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take 12 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I [ ] 0 to 5 days
   - II [ ] 6 to 10 days
   - III [✓] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [✓] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Jose E. Martinez   Case No. 25-cv-22411-JEM
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Robert F. Moore
Assistant United States Attorney
SDFL Court ID No. A5502488

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ANDREW H. JACOBUS

**Case No:** _____

Count #: 1-7

Wire Fraud

18 U.S.C. § 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 or twice the pecuniary gain or loss

Count #: 8-17

Money Laundering

18 U.S.C. § 1956(a)(1)(A)(i)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $500,000 or twice the value of the property involved

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.